

The following constitutes
the order of the court. Signed October 25, 2013

Charles Novack
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

<div style="text-align: left">

In re:

ROBERT TRAINA AND ANN TRAINA,

   Debtors.

AUTOSOURCE CAPITAL, INC.,

   Plaintiff,

vs.

ROBERT TRAINA AND ANN TRAINA,

   Defendants.

</div>

Case No. 11-57061 CN

Chapter 7

Adversary No. 11-5313

**MEMORANDUM DECISION**

On June 28, 2011 AutoSource Capital, Inc. commenced this adversary proceeding seeking a non-dischargeable judgment against defendants Robert Traina and Anna Traina and the denial of their chapter 7 discharge under Bankruptcy Code §§ 523(a)(2)(A) and 727(a)(2) and (4), respectively. During the course of this adversary proceeding, this court dismissed the §§727(a)(2) and 523(a)(2) claims, and on September 16, 2013, it conducted a trial on the remaining §727(a)(4) claim for relief. This memorandum decision constitutes this court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

From August 2001 through August 2010, the Trainas (who were a married couple) resided at a single family residence located at 1262 Hillcrest Drive in San Jose, California. During most of that decade, Anna Traina was a licensed real estate broker who operated a real estate brokerage firm,

<div style="text-align: left; writing-mode: vertical-rl">

**UNITED STATES BANKRUPTCY COURT**
**For The Northern District Of California**

</div>

1

Contempo Realty.[1]  While Robert Traina was also a licensed real estate agent, he worked primarily as a general contractor. The Trainas also owned several investment properties, including a 50 unit apartment building in Stockton, California, and a town home and condominium in Sacramento, California.

By October 2009, the "Great Recession" had significantly affected Contempo Realty and the Trainas' finances, and they were struggling to pay the Hillcrest Drive mortgage.  After a failed attempt to modify the Hillcrest Drive mortgage, they consulted with a bankruptcy lawyer in December 2009.  The Trainas decided not to file a bankruptcy at that time, and instead opted to sell Hillcrest Drive and use the net sales proceeds to purchase a more affordable residence.

And that is exactly what the Trainas did.  In March 2010, they sold the Hillcrest Drive property for $1.35 million, netted $125,328.87 from the sale and used those funds, in May 2010, to purchase a residence located at 16635 Trail Drive, Morgan Hill, CA ("Trail Drive").  The Trainas have primarily resided in the Trail Drive property since that time, and generally have paid the mortgage, property taxes, insurance premiums, utility bills, and all expenses associated with that property.

The Trainas, however, did not take title to the Trail Drive property nor sign the note and deed of trust required to purchase it. Instead, Anna Traina's parents - Ron and Christina Wallace - took title and signed the note and deed of trust. The Wallaces never moved into the Trail Drive property and never intended to do so.  Indeed, when the Trainas moved into the Trail Drive property, Christina Wallace was a long-time resident of a senior living facility.

The Wallaces did not take title to the Trail Drive property by chance.  Anna Traina testified that her family's credit was too damaged to purchase the Trail Drive property, and she asked her parents to take title to the Trail Drive property and sign the note and deed of trust. The Wallaces agreed to help their daughter, and the Trainas then meticulously masked their involvement in the purchase.

Following the Hillcrest Drive sale, the Trainas did not deposit the $125,328.87 sales proceeds

---

[1]  Anna Traina also holds a California Finance Lender's license.

2

into their bank account. Instead, they deposited these funds into an escrow account in the Wallaces' names to demonstrate the Wallaces' ability to fund the Trail Drive purchase. When the Wallaces needed an additional $20,000 to complete the down payment, Anna Traina wired these funds from her account into her father's bank account.

Ron Wallace and Anna Traina both testified that the Trainas fully funded the Trail Drive down payment. Ron Wallace also testified that while he and his wife would sign the note and deed of trust, the Trainas would make the monthly note payments and cover all other expenses associated with the property, including insurance payments, taxes, and general maintenance items.

The Trail Drive escrow closed on May 20, 2010. The final purchase price was $699,000, and the balance of the purchase price was financed by a $559,200 note and deed of trust with Bank of America. Ron and Christina Wallace were the only obligors on the note.

The Trainas filed their chapter 7 petition on July 28, 2011, and identified the Trail Drive property as their residence. They did not, however, list the Trail Drive property on their Bankruptcy Schedule A, assert any exemption against the property on their Schedule C or list the Bank of America obligation on their Schedule D. While they identified a monthly $2,960 housing expenditure on their Schedule J, they did not list any expense for property insurance or taxes. The Trainas continued this deception on their Statement of Financial Affairs. In Section 2 of their Statement of Financial Affairs, the Trainas were required to identify "any amount of income received by the debtor other than from employment . . . during the two years immediately preceding the commencement of this case." The Trainas did not list the Hillcrest Drive sales proceeds. Section 10 of the Statement of Financial Affairs required the Trainas to "List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of the case." The Trainas did not list the Hillcrest Drive sale or the funds transferred to the Wallaces to purchase the Trail Drive property.

The Trainas amended their bankruptcy schedules and Statement of Financial Affairs on October 12, 2011, immediately before their October 13, 2011 meeting of creditors. While they now disclosed the Hillcrest Drive sale on the amended Statement of Financial Affairs, they listed the sale

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1  price and purchase price as being virtually identical in order to mask their $125,000 net profit. The

2  Trainas also did not, once again, disclose the significant monetary transfers to the Wallaces. Their

3  amended bankruptcy schedules were equally disingenuous. While they amended their Schedule A to

4  list the Trail Drive property, they described title as "Debtor's parents currently on title." [2]

5  The chapter 7 Trustee conducted the Trainas' §341 meeting on October 13, 2011 and later

6  conducted a Rule 2004 exam to investigate the Hillcrest Drive sale and Trail Drive purchase. As a

7  result of his investigation, the Trustee commenced a fraudulent conveyance adversary proceeding

8  against the Wallaces to avoid the transfer of the funds used to purchase the Trail Drive residence.

9  The Trustee and the Wallaces resolved the adversary proceeding by transferring title to the Trail

10  Drive property to the Trustee, which the Trustee sold to recover the only funds in this bankruptcy

11  estate.

12  **LEGAL DISCUSSION**

13  Under Bankruptcy Code § 727(a)(4), this court may deny a Chapter 7 debtor's discharge if

14  (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact;

15  (3) the oath was made knowingly; and (4) the oath was made fraudulently. AutoSource must

16  establish these elements by a preponderance of the evidence.[3] *In re Retz*, 606 F.3d 1189, 1197 (9th

17  Cir. 2010) (*citing Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005).

18  Moreover, "objections to discharge under 11 U.S.C. § 727 are to be literally and strictly construed

19  against the creditor and liberally in favor of the debtor." *In re Coombs*, 193 B.R. 557, 560 (Bankr.

20  S.D. Cal. 1996) (*quoting In re Bodenstein*, 168 B.R. 23, 27 (Bankr.E.D.N.Y.1994))

21  Before this court addresses the merits of the §727(a)(4) claim, it first must debunk the

22  Trainas' contention that their amended bankruptcy schedules and Statement of Financial Affairs

23  preclude the denial of their discharge. The Trainas' amendments do not prevent this court from

24  determining whether they made a false oath in their original bankruptcy documents. *See, e.g.,*

---

26  [2] They also claimed an exemption in the property on Schedule C. Schedule D was amended to include a $550,000 claim held by Bank of America.

27

28  [3] AutoSource holds a substantial claim against the Trainas, and the Trainas do not dispute its standing to assert this claim for relief.

MEMORANDUM ORDER

*Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 878 (9th Cir. BAP 2007) (affirming bankruptcy court's refusal to allow the debtor to use a "foxhole conversion" to absolve the debtor of fault when the debtor waited until after the meeting of creditors to amend the schedules); *In re Haubert*, 2006 WL 6602442, at *3+ (Bankr. S.D. Cal. Oct 12, 2006); *In re Killian*, 2008 WL 5834017, *3 (Bankr. D.Or. Nov 17, 2008). *See also, In re Beauchamp*, 236 B.R. 727, 732 (9th Cir. BAP 1999), *aff'd*, 5 Fed.Appx. 743 (9th Cir.2001) (disclosure "of secreted assets at or before the §341 meeting" does not preclude a finding of intent to hinder, delay or defraud under 727(a)(2).").[4]

Bankruptcy Code § 727(a) is designed "to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (*citing Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 274 (9th Cir. BAP 1990)); *see also*, *Searles v. Riley (In re Searles)*, 317 B.R. 368, 378 (9th Cir. BAP 2004) ("The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs."). Although § 727 claims are, typically, narrowly construed in the debtor's favor, a debtor who secretes assets must surmount the stain of unclean hands to benefit from this favorable statutory construction. *Beauchamp*, 236 B.R. at 732. "[T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)[ ], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.") *Id*. (citations omitted).

This court is hard-pressed to describe their initial set of schedules and Statement of Financial Affairs as anything but fraudulent. Furthermore, the amended bankruptcy documents did little to ameliorate this problem, as even these amendments concealed critical facts from the Trustee - who was then compelled to engage in "costly investigations" and litigation to capture valuable assets for this bankruptcy estate. The Trainas did not file their amended documents until the eve of their §341

---

[4] The analysis of what constitutes intent to defraud with respect to § 727(a)(2) is applicable under § 727(a)(4). *See* 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][a], (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)

meeting,[5] thus undermining the Trustee's efforts to conduct a meaningful examination. More importantly, the Trainas' amended documents still did not fully describe their interest in the Trail Drive property and the means by which it was purchased. The court finds that the amended bankruptcy documents did not absolve the Trainas of any potential liability under §727(a)(4).

**A.     The Defendants' Bankruptcy Documents Contained False Oaths**

Errors and omissions from a debtor's bankruptcy schedules and statements can constitute false oaths under §727(a)(4). *Retz*, 606 F.3d at 1197; *Searles*, 317 B.R. at 377; *Roberts*, 331 B.R. at 882. *See, e.g.,* 28 U.S.C. § 1746; Fed. R. Bankr.P. 1008. It is beyond dispute that when the Trainas signed their original Petition, Schedules and Statement of Financial Affairs, they knew that they materially misrepresented their interest in the Trail Drive property and the transfers used to purchase the Trail Drive property. The Trainas wholly failed to disclose any interest in Trail Drive, omitted the fact that they were responsible for that property's mortgage payments, property taxes and insurance payments, and did not list any information regarding the Hillcrest Drive sale and the significant monetary transfers to the Wallaces. The amendments also failed to adequately disclose the nature of their interest in Trail Drive, prompting the Trustee to conduct a 2004 exam. The Trainas do not deny signing the Petition, the Schedules, Statement of Financial Affairs, and their amendments. Accordingly, the court finds that the Trainas made a false oath on their bankruptcy Schedules and Statement of Financial Affairs.

**B.     The Omissions were Material**

Bankruptcy Code § 727(a)(4)(A) requires that the false oath in question relate to a material fact. 11 U.S.C. § 727(a)(4)(A). A fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007) (citations

---

[5]The §341 meeting had been continued from September 1, 2011. No evidence was presented regarding why the meeting was continued.

MEMORANDUM ORDER

Case 11-05613 Doc# 73 Filed 10/25/13 Entered 10/25/13 15:25:55 Page 6 of 10

omitted). An omission or misstatement that "detrimentally affects administration of the estate" is material. *In re Wills*, 243 B.R. at 63 (*citing* 6 Lawrence P. King et al., Collier on Bankruptcy ¶ 727.04[1][b] (15th ed. rev.1998)).

The Trainas' false oaths relate to the only property which had significant value to the bankruptcy estate - the Trail Drive property and the fraudulent conveyance claim against the Wallaces. Accordingly, the court finds that the Trainas' omissions were "material."

**C.      The Trainas Acted "Knowingly" When they Made their False Oath**

A debtor act must act "knowingly" when making a false oath. *In re Roberts*, 331 B.R. at 882; *see also* 11 U.S.C. § 727(a)(4)(A). "A debtor 'acts knowingly if he or she acts deliberately and consciously." (*In re Retz*, 606 F.3d at 1198 (*quoting In re Khalil*, 379 B.R. at 173); Black's Law Dictionary 888 (8th ed. 2004) ("A person acts knowingly if he or she acts deliberately and consciously"). The Trainas were tasked with verifying the accuracy of their Petition, Bankruptcy Schedules and Statement of Financial Affairs. While the Trainas testified that they believed their original bankruptcy documents were accurate and that they were not required to disclose their interest in the Trail Drive property, this court gives little credence to their testimony. This court does not accept the Trainas' contention that while they signed their bankruptcy documents under penalty of perjury, they did not fully understand the extent of the necessary disclosures. Anna Traina is an experienced and sophisticated real estate professional (as is her husband, who jointly invested in numerous rental properties with her), and they, in this court's estimate, fully understand the straightforward demands posed by their Bankruptcy Schedules and Statement of Financial Affairs. The fact that their omissions all related to a carefully engineered real estate transaction that shielded their most significant asset only confirms this court's finding that these were deliberate and conscious omissions. Accordingly, the court finds that the Trainas acted "knowingly" when they signed their Petition, Bankruptcy Schedules and Statement of Financial Affairs and failed to make material disclosures regarding the Hillcrest Drive sale and Trail Drive purchase.

7

**D.      The False Oaths were Made Fraudulently**

To demonstrate fraudulent intent under §727(a)(4), AutoSource must establish that the Trainas made the representations or omissions at issue, knew they were false when they made them, and  made them with the intention and purpose of deceiving the creditors. *In re Retz,* 606 F.3d at 1198-1999; *Khalil*, 379 B.R. at 173.  Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir.1985).  *See also*, *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 878 (9th Cir. BAP 2007) ("The sheer number of material inaccuracies contained in schedules that debtor, an attorney, admittedly reviewed and revised twice suffices as circumstantial evidence to support the finding that the 'knowingly and fraudulently' element of § 727(a)(4) was proven.")*; Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 565 (Bankr.S.D.Cal.1996) ("Multiple omissions of material information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.")  Moreover, failing to rectify inconsistencies and omissions when filing amended schedules may be weighed in favor of finding the requisite intent to deceive. *Khalil*, 379 B.R. at 175 *(citing to Martin Marietta Materials Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 477 (Bankr.W.D.Tex.2004).

The evidence before this court firmly established that the false oaths were products of fraud. In late 2009, when the Trainas were experiencing severe financial distress, they carefully and knowingly defrauded their creditors by selling the Hillcrest Drive residence, transferring the substantial net proceeds to the Wallaces, and using the Wallaces to act as straw men to purchase their next residence, the Trail Drive property.  They acknowledged at trial that they misled Bank of America, which loaned the Wallaces the funds necessary to purchase the Trail Drive property.  They perpetuated this fraud when they filed their Chapter 7 bankruptcy by failing to fully disclose - on their original and amended Bankruptcy Schedules and Statement of Financial Affairs - the Hillcrest Drive sale, their interest in the Trail Drive property, all of the monthly or regular expenses they incurred relating to the Trail Drive property (which would have alerted the Trustee of their

<div align="center">8</div>

undisclosed interest), and the funds that they transferred to the Wallaces to purchase that property. The Trainas made these omissions to ensure that the Trustee and their creditors would not sell the Trail Drive property, use the sales proceeds to fund their bankruptcy estate, and provide some dividend to their general, unsecured creditors.

As discussed above, the only references to the Trail Drive property in their original bankruptcy documents identified it as their residence on the Petition, for which there was a monthly housing cost on Schedule I (which the Trustee could have construed as merely rent). The Trainas did not state that they paid the property taxes and insurance, failed to disclose the Hillcrest Drive sale (which closed within two years of the petition date), failed to state that they netted $125,000 from its sale, and failed to disclose that they transferred approximately $145,000 to the Wallaces (again within two years of the petition date) to fund the purchase of the Trail Drive property. It would be impossible for any interested party reading their bankruptcy documents to ascertain the true nature of the Trainas' interest in Trail Drive. Under these circumstances, the court can reasonably infer that the Trainas' material omissions were fraudulent, and their less than truthful amendments simply reinforce this finding.

### CONCLUSION

AutoSource has established, by a preponderance of the evidence, all the elements of Bankruptcy Code §727(a)(4)(A). The Trainas' chapter 7 discharge is denied. AutoSource shall submit an appropriate judgment for this court's signature.

**\* \* END OF ORDER \* \* \***

**MEMORANDUM ORDER**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-05613    Doc# 73    Filed: 10/25/13    Entered: 10/25/13 15:25:55    Page 9 of 10

**COURT SERVICE LIST**

Recipients are ECF participants

10